Filed 11/14/24  In re E.G. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re E.G. et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>T.M. et al.,<br><br>        Defendants and Appellants. | E083064<br><br>(Super.Ct.No. INJ1900254)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Elizabeth Tucker, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Conditionally reversed and remanded with directions.

Christopher R. Booth, under appointment by the Court of Appeal, for Defendant and Appellant, T.M.

1

Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant, E.G.

Minh C. Tran, County Counsel, and Julie Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

T.M. (mother) and E.G. (father) appeal from orders of the juvenile court terminating parental rights to their children I.G. and E.G. The parents contend the Riverside County Department of Public Social Services (DPSS) did not comply with its duty to adequately inquire whether the children were Indian[1] children under the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) and related state law. Specifically, they argue DPSS failed to make sufficient inquiry of extended family members and obtain information of possible Indian ancestry. DPSS concedes the error and agrees to a conditional reversal of the orders and a limited remand for further inquiry and, if appropriate, notice under ICWA. We accept the concession and so order.

I.

FACTS AND PROCEDURAL BACKGROUND

Because the parents' appeals focus solely on the adequacy of DPSS's inquiries under ICWA, we need not recite the facts of this case in detail. After investigating a referral of general neglect of the children, DPSS detained the children pursuant to

---

[1] "The language of both federal and state law uses the term 'Indian.' California courts have used alternative terms, such as 'American Indian' or 'Native American'; we use the term 'Indian' throughout to reflect the statutory language . . . . No disrespect is intended." (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1125, fn. 1.)

2

protective custody warrants and filed a petition in the juvenile court alleging the children were dependents of the court pursuant to Welfare and Institutions Code[2] section 300, subdivision (b)(1). Mother and father consistently denied having any Indian ancestry. The juvenile court ordered the children removed from the parents and subsequently sustained the allegations of general neglect, declared the children to be dependents of the court, and directed DPSS to offer the parents family reunification services. The court found ICWA did not apply.

Although DPSS initially recommended the juvenile court order continued reunification services to the parents, in an addendum report for the six-month review hearing, DPSS recommended the court find by clear and convincing evidence that the parents failed to make adequate progress in alleviating the reasons for the dependency, terminate services, and set a hearing for selection of a permanent plan pursuant to section 366.26. At the hearing, the juvenile court terminated reunification services and set a permanency hearing. The court found DPSS had made a sufficient inquiry under ICWA and that ICWA did not apply.

In a report for the permanency hearing, DPSS recommended the juvenile court terminate parental rights and free the children for adoption. In addition, DPSS recommended the court find sufficient inquiry had been made about the children's possible Indian ancestry and that ICWA did not apply. After conducting a contested permanency hearing, the juvenile court terminated mother's and father's parental

---

[2] All undesignated statutory references are to the Welfare and Institutions Code.

3

rights and selected adoption as the children's permanent plan. The court again found DPSS had made an adequate inquiry under ICWA and that ICWA did not apply.

The parents timely appealed.

## II.

## DISCUSSION

"The protective provisions of ICWA turn on a determination of whether a minor is an 'Indian child' as defined by statute. 'A determination by an Indian tribe that a child is or is not a member of, or eligible for membership in, that tribe, or testimony attesting to that status by a person authorized by the tribe to provide that determination, shall be conclusive.' (Welf. & Inst. Code, § 224.2, subd. (h); see Cal. Rules of Court, rule 5.481(b)(4); 25 C.F.R. § 23.108 (2024).) Of course, a tribe may only make such determination, or exercise its right of intervention, if it is made aware of the ongoing proceedings. Accordingly, the scheme requires the appropriate tribe be notified when the court or county welfare agency has reason to know the child is Indian. (Welf. & Inst. Code, § 224.3, subd. (a); see 25 U.S.C. § 1912(a); 25 C.F.R. § 23.111(a) (2024).)" (*In re Kenneth D.* (2024) 16 Cal.5th 1087, 1098-1099, fns. omitted.)

"Fulfilling the notification duty requires sufficient inquiry into the child's native heritage. 'The court, county welfare department, and the probation department have an affirmative and continuing duty to inquire whether a child . . . [facing a dependency or delinquency proceeding] is or may be an Indian child.' (Welf. & Inst.

4

Code, § 224.2, subd. (a); see Cal. Rules of Court, rule 5.481(a).)  California's statutory scheme imposes a duty of initial inquiry on both the department and the court.  The department's duty arises when a report of abuse or neglect is made and/or when the county takes the child into its temporary custody.  (Welf. & Inst. Code, § 224.2, subds. (a), (b).)  The inquiry 'includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled.'  (Welf. & Inst. Code, § 224.2, subd. (b).)  Then, on the first appearance upon a petition, 'the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child.'  (Welf. & Inst. Code, § 224.2, subd. (c); see Cal. Rules of Court, rule 5.481(a)(2); 25 C.F.R. § 23.107(a) (2024).)"  (*In re Kenneth D.*, *supra*, 16 Cal.5th at p. 1099, fns. omitted.)

"A duty of *further* inquiry exists when 'the court, social worker, or probation officer has *reason to believe* that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child . . . .'  (Welf. & Inst. Code, § 224.2, subd. (e), italics added.)  There is reason to believe a child is Indian when there exists 'information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe.'  (Welf. & Inst. Code, § 224.2, subd. (e)(1); see *id*., subd. (d).)  Further inquiry includes, but is not limited to, interviewing the parents and

5

extended family members, contacting the BIA and the State Department of Social Services for assistance, and contacting the relevant tribe and 'any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility.'  (Welf. & Inst. Code, § 224.2, subd. (e)(2)(C); see *id*., subd. (e)(2); Cal. Rules of Court, rule 5.481(a)(4).)"  (*In re Kenneth D.*, *supra*, 16 Cal.5th at pp. 1099-1100.)

"If proper inquiry reveals information creating reason to know a minor is an 'Indian child,' the relevant tribe must be notified, and 'the court shall treat the child as an Indian child unless and until the court determines on the record and after review of the report of due diligence . . . and a review of the copies of notice, return receipts, and tribal responses . . . that the child does not meet the definition of an Indian child . . . .' (Welf. & Inst. Code, § 224.2, subd. (i)(1); see Cal. Rules of Court, rule 5.481(b)(3); 25 C.F.R. § 23.107(b) (2024).)  Otherwise, '[i]f the court makes a finding that proper and adequate further inquiry and due diligence as required in this section have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that . . . [ICWA] does not apply to the proceedings, subject to reversal based on sufficiency of the evidence.'  (Welf. & Inst. Code, § 224.2, subd. (i)(2); see Cal. Rules of Court, rule 5.481(b)(3)(A).)  Further, if a court or party subsequently receives information suggesting a reason to believe the child is Indian, the court must order further inquiry.  (Welf. & Inst. Code, § 224.2, subd. (i)(2).)"  (*In re Kenneth D.*, *supra*, 16 Cal.5th at p. 1100.)

As indicated, *ante*, the children at issue here were detained pursuant to protective custody warrants. At all times during the proceedings below, section 224.2, subdivision (b), provided: "If a child is placed into the temporary custody of a county welfare department *pursuant to Section 306* . . . , the county welfare department . . . has a duty to inquire whether that child is an Indian child," and the duty of inquiry included but was not limited to contacting and interviewing extended family members. (Former § 224.2, subd. (b), enacted by Stats. 2018, ch. 833, § 5, italics added.) Multiple panels of this court have disagreed about whether former section 224.2 mandated inquiry of extended family members when a child was taken into custody pursuant to a protective custody warrant under section 340.[3] (Compare, e.g., *In re Robert F.* (2023) 90 Cal.App.5th 492, review granted July 26, 2023, S279743 [concluding there was no such duty] and *In re Ja.O.* (2023) 91 Cal.App.5th 672, review granted July 26, 2023, S280572 [same] with *In re Delila D.* (2023) 93 Cal.App.5th 953, review granted Sept. 27, 2023, S281447 [concluding there *was* such a duty and declining to follow *Robert F.*] and *In re Samantha F.* (2024) 99 Cal.App.5th 1062 [same], disapproved on another ground by *In re Dezi C.*, *supra*, 16 Cal.5th at p. 1152, fn. 18.)

---

[3] Every other district of the Court of Appeal to address the issue in a published opinion sided with our decision in *In re Delila D.* and held the duty of inquiry as to extended family members under former section 224.2, subdivision (b), applied regardless of whether the child was taken into custody pursuant to a warrant. (*In re L.B.* (2023) 98 Cal.App.5th 512 [First Dist., Div. Four]; *In re C.L.* (2023) 96 Cal.App.5th 377 [Third Dist.]; *In re Jerry R.* (2023) 95 Cal.App.5th 388 [Fifth Dist.]; *In re V.C.* (2023) 95 Cal.App.5th 251 [First Dist., Div. Two], disapproved on another ground by *In re Dezi C.*, *supra*, 16 Cal.5th at p. 1152, fn. 18.)

But we need not revisit that question. While this appeal was pending, the Legislature adopted, and the Governor signed, Assembly Bill No. 81 (2023-2024 Reg. Sess.). Among other things, that bill amended section 224.2, subdivision (b), to plainly state child welfare departments must inquire of extended family members regardless of whether the child was taken into temporary custody under section 306 *or* pursuant to protective custody under section 340. (§ 224.2, subd. (b)(2), as amended by Stats. 2024, ch. 656, § 3, eff. Sept. 27, 2024.)

Statutes usually do not apply retroactively (see, e.g., Civ. Code, § 3; Code Civ. Proc., § 3) "'unless the Legislature plainly intended them to do so.' [Citation.] Nonetheless, 'a statute that merely *clarifies*, rather than changes, existing law does not operate retrospectively even if applied to transactions predating its enactment." [Citation.] Such a statute 'may be applied to transactions predating its enactment without being considered retroactive' because it 'is merely a statement of what the law has always been.'" (*In re Marriage of Fellows* (2006) 39 Cal.4th 179, 183, fn. omitted.) "In determining whether a statute clarified or changed the law, we give 'due consideration' to the Legislature's intent in enacting that statute. [Citation.] The Legislature's declaration of an existing statute's meaning, while not dispositive, is a factor entitled to consideration." (*Id*. at p. 184.)

"A legislative declaration that an amendment merely clarified existing law 'cannot be given an obviously absurd effect, and the court cannot accept the Legislative statement that an unmistakable change in the statute is nothing more than a

8

clarification and restatement of its original terms.' [Citation.] Material changes in language, however, may simply indicate an effort to clarify the statute's true meaning. [Citation.] 'One such circumstance is when the Legislature promptly reacts to the emergence of a novel question of statutory interpretation[.]' [Citation.] ""An amendment which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act, where the amendment was adopted soon after the controversy arose concerning the proper interpretation of the statute. . . . [¶] If the amendment was enacted soon after controversies arose as to the interpretation of the original act, it is logical to regard the amendment as a legislative interpretation of the original act—a formal change—rebutting the presumption of substantial change.' [Citation.]""" (*Carter v. California Dept. of Veterans Affairs* (2006) 38 Cal.4th 914, 922-923 (*Carter*).)

The legislative history of Assembly Bill No. 81 shows the amendment to section 224.2, subdivision (b), sought to "*specify* that a county welfare department or county probation department has a duty to inquire whether the child is or may be an Indian child when first contacted regarding a child," regardless of how the child was taken into custody. (Legis. Counsel's Digest, Assem. Bill No. 81 (2023-2024 Reg. Sess.) Stats. 2024, ch. 656, italics added.) The legislature did not intend to *change* the law regarding the initial duty of inquiry, but merely to "*[c]larif[y]* the timing, duration, and scope of a county department's, and a court's, duty to inquire whether a child is or may be an Indian child." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d

9

reading analysis of Assem. Bill No. 81 (2023-2024 Reg. Sess.) as amended Aug. 19, 2024, p. 5, italics added.)  Because the amendment followed closely the development of a split in authority in this court on the proper interpretation of former section 224.2, subdivision (b), we must accept the Legislature's declaration that the amendment meant to clarify the existing duty of inquiry and not to create a new one.  (*Carter*, *supra*, 38 Cal.4th at p. 923.)  Therefore, it is appropriate to apply the amended statute in this appeal.

The parents argue DPSS failed to satisfy its duty of inquiry under ICWA because the record contains no evidence that DPSS interviewed various extended family members about the children's possible Indian ancestry, though the family members were either known to the social worker or their whereabouts were easily ascertainable.  DPSS concedes it inadvertently failed to interview extended family members and does not oppose a conditional reversal of the orders terminating parental rights and a limited remand for additional ICWA inquiry.  We accept the concession.

Finally, we note the agency's failure of inquiry is not subject to harmless error analysis.  Recently, the California Supreme Court held that "an inadequate Cal-ICWA inquiry requires conditional reversal of the juvenile court's order . . . with directions to the agency to conduct an adequate inquiry, supported by record documentation."  (*In re Dezi C.*, *supra*, 16 Cal.5th at p. 1125.)  The Court reasoned that "[w]hen a Cal-ICWA inquiry is inadequate, it is impossible to ascertain whether the agency's error is prejudicial.  [Citations.]  '[U]ntil an agency conducts a proper initial inquiry and

10

makes that information known, it is impossible to know what the inquiry might reveal.'" (*Id*. at p. 1136.)

## III.

## DISPOSITION

The juvenile court's orders terminating the parental rights to the children are conditionally reversed. On remand, the juvenile court shall direct DPSS to provide the court with a supplemental report detailing what additional efforts, if any, it has taken to obtain information about the child's possible Indian ancestry, including the names and other relevant information of family members interviewed. The juvenile court shall then determine whether the ICWA inquiry was adequate and, if applicable, whether proper notice has been given to relevant Indian tribes. If the juvenile court determines the inquiry completed and the notice given were adequate (and, if after receiving notices, the relevant tribes do not respond or respond that the child is not an Indian child within the meaning of ICWA), the orders terminating parental rights to the children shall immediately be reinstated and further proceedings shall be conducted as appropriate.

In the alternative, if the juvenile court determines the inquiry and/or notice conducted was inadequate, it shall direct DPSS to conduct additional inquiry and provide additional notice to the relevant Indian tribes of any additional relevant information DPSS might have received. The court shall then determine whether the additional inquiry and notice are adequate. If, after receiving notices, the relevant

11

tribes do not respond or respond that the child is not an Indian child within the meaning of ICWA, the orders terminating parental rights to the children shall immediately be reinstated, and further proceedings shall be conducted, as appropriate.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER

Acting P. J.

We concur:

MILLER

J.

FIELDS

J.